# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:18-cv-00026-RJC-DSC

| | | |
|---|---|---|
| JORGE MIGUEL PALACIOS<br>JESUS EDUARDO CARDENAS LOZOYA | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JEFFERSON B. SESSIONS et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on Jorge Miguel Palacios and Jesus Eduardo Cardenas Lozoya's ("Plaintiffs") Motion to Certify Class, (Doc. No. 2); Defendant Telisa White's ("Defendant White") Motion to Dismiss, (Doc. No. 13); Federal Defendants-Respondents ("Defendants") Motion to Dismiss, (Doc. No. 21); the parties' associated briefs and exhibits (Doc. Nos. 22–25); and the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 26), recommending the Court grant Federal Defendants-Respondents Motion to Dismiss and deny as moot Defendant White's Motion to Dismiss. Plaintiffs filed a timely Objection to the M&R, (Doc. No. 27), and Defendant filed a timely Response to Plaintiff's Objections, (Doc. No. 28). The Motions are now ripe for the Court's consideration.

## I. BACKGROUND

Neither party has objected to the Magistrate Judge's statement of the factual and procedural background of this case. Therefore, the Court adopts the facts as set

forth in the M&R.

## II.  LEGAL STANDARD

### A.  <u>Review of the Magistrate Judge's Recommendation.</u>

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) & (B).  The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  <u>Id.</u> § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with."  <u>Orpiano v. Johnson</u>, 687 F.2d 44, 47 (4th Cir. 1982).  De novo review is also not required "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations."  <u>Id.</u>

## III.  DISCUSSION

Defendants have moved to dismiss this case alleging that (1) Plaintiffs' release from detention renders their claims moot and deprives them of standing to bring this action and (2) this Court lacks federal subject matter jurisdiction over Plaintiffs' case.  The Magistrate Judge disagreed with Defendants' first argument and found that the relation back doctrine applies in this case, giving Plaintiffs standing.  (Doc. No. 26 at 6).  No parties challenged this determination, so the Court need not analyze the M&R's standing determination.  Regarding Defendants'

second argument, the Magistrate agreed with Defendants and held that this Court lacks subject matter jurisdiction over Plaintiffs' claims. (Id.). Specifically, the Magistrate held that, pursuant to 8 U.S.C. § 1226(e) as well as 8 U.S.C. § 1252(a)(2)(B)(ii), this Court lacks jurisdiction over the Immigration Judges' ("IJs") discretionary determination that the Charlotte Immigration Court is an improper venue for Plaintiffs' bond motions. (Doc. No. 26 at 6–7). Because the M&R recommended that the Court dismiss Plaintiffs' claims on jurisdictional grounds, it found that "it is not necessary for the Court to reach the merits of [Defendant] White's Motion" and recommended that it be denied as moot. (Id. at 8).

Plaintiff now objects to the Magistrate Judge's M&R, (Doc. No. 26), arguing that the M&R erred in the following ways: (1) the M&R mischaracterized the challenged policy and erred in finding Plaintiffs' claims are based on discretionary determinations; (2) due to the M&R's mischaracterization of the challenged policy as discretionary, the M&R incorrectly found that this Court does not have jurisdiction; and (3) the M&R incorrectly neglected to adjudicate Defendant White's Motion to Dismiss. For the reasons set forth below, the Court disagrees with Plaintiffs' objections, **ADOPTS** the Magistrate Judge's M&R, **GRANTS** Federal Defendants-Respondents' Motion to Dismiss, and **DENIES as MOOT** Defendant White's Motion to Dismiss and Plaintiffs' Motion to Certify Class.

A.    The M&R Correctly Found that Plaintiffs' Claims Are Based on Discretionary Determinations.

Plaintiffs first argue that the M&R mischaracterizes the challenged policy of the IJs as discretionary in nature. Specifically, Plaintiffs state that this Court should reject the M&R's findings that "(1) Plaintiffs are challenging IJ Defendants' 'discretionary determinations' in their individual cases, (2) the IJ Defendants have 'sen[t]' the bond motions of Plaintiffs and proposed class members 'to another venue for hearing,' and (3) that the policy and/or practice at issue in this case is 'properly in the province of the [immigration courts].'" (Doc. No. 27 at 10) (quoting the M&R, Doc. No. 26, at 6). Plaintiffs challenge the M&R's finding that Plaintiffs challenge individual bond decisions "and not Defendants' uniform refusal to conduct bond hearings." Id. The Court disagrees with Plaintiffs' contentions and finds that the M&R correctly characterized the IJs' decisions in Plaintiffs' individual cases as discretionary.

First, the Court notes that determining whether the IJ Defendants' actions are discretionary is the threshold inquiry that resolves this dispute. Pursuant to 8 U.S.C. § 1226(e),

> [t]he Attorney General's discretionary judgment regarding the application of this section [Apprehension and detention of aliens] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."

Under this statute, any discretionary decisions made by the Attorney General or his designees regarding the arrest, detention, and release of aliens—including bond hearing determinations—are shielded from judicial review. Because immigration

4

judges are considered the Attorney General's designees, any discretionary decisions they make regarding bond hearings are barred from federal judicial review. 8 C.F.R. § 1003.10 ("[I]mmigration judges are attorneys whom the Attorney General appoints as administrative judges within the Office of the Chief Immigration Judge to conduct specified classes of proceedings, including hearings under the [Immigration and Nationality Act]."); 8 C.F.R. § 1003.19 ("Custody and bond determinations . . . may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236."); Matter of Cerda Reyes, 26 I. &N. Dec. 528, 530 (2015) ("[T]he authority to hear bond cases comes from the Act itself, via delegation from the Attorney General."). Thus, the Court must first determine whether IJ Defendants' decisions in Plaintiffs' bond motions were individual, discretionary determinations or were, instead—as Plaintiffs' allege—predetermined, automatic denials that were products of a uniform "No Bond Hearing Policy."

In Plaintiffs' Objections to the Magistrate Judge's M&R, Plaintiffs charge IJ Defendants with a duty to "expeditiously *conduct bond hearings* for individuals who properly file requests with the Charlotte Immigration Court while detained in the Carolinas," regardless of the detainee's ability to attend the hearing. (Doc. No. 27 at 11). Plaintiffs argue that because IJ Defendants have the ability to conduct hearings via telephone or video conferencing, yet choose not to do so, refusing to hold bond hearings because of the detainee's inability to be physically present is inexcusable. (Id.). Plaintiffs argue that the same should hold true "where the person makes a voluntary, knowing and intelligent election to waive presence at the

5

hearing." (Id.).  In support of their position, Plaintiffs quote the Sixth Circuit case of Pruidze v. Holder, 632 F.3d 234 (6th Cir. 2011), which discusses when Congress has vested the Executive Office for Immigration Review with jurisdiction over a particular type of motion: "the agency is not required by statute or by this decision to grant such a motion.  But it is required—by both—to consider it."  Pruidze, 632 F.3d 234.

The Court agrees that the IJ Defendants were required to consider Plaintiffs' requests for bond hearings.  But, unlike Plaintiffs contend, the Court finds that they did consider their requests.  The Court comes to this conclusion by examining whether the IJ Defendants had reasons underlying their decisions to decline Plaintiffs' bond hearing requests, or alternatively, whether the IJ Defendants summarily denied these requests without reason.  In other words, the Court looks to see if the IJ Defendants actually exercised individual discretion in their decision-making process, or if they were merely rubber-stamping denials across the board, as Plaintiffs allege.  The Court finds that the IJ Defendants had a reasonable—and particularized—basis for declining to exercise its authority over Plaintiffs' cases: namely, finding that Charlotte was not the proper venue for the hearings. Pursuant to 8 C.F.R. § 1003.19(c)(1), the proper locale to hold bond hearings for individuals who are detained is, first and foremost, "the Immigration Court having jurisdiction over the place of detention."  Thus, the place of detention is central to the determination of the bond hearing location.

In Plaintiff Palacios's case, Palacios was taken into custody at the

Mecklenburg County Jail on January 17, 2018 pending transfer to permanent detention space at the Stewart Detention Center in Lumpkin, Georgia for removal proceedings. (Doc. No. 21-2, Ex. A ¶ 6). That same day, Palacios filed a motion for a bond hearing, which included a signed waiver of appearance authorizing his attorney to represent him at a bond hearing in his absence. (Doc. No. 1, ¶ 46). Nevertheless, on January 22, 2018, the IJ declined to exercise his authority to hold Palacios's bond hearing due to Palacios's pending relocation to the Stewart Detention Center. (See Doc. No. 21-2, Ex. A ¶ 9). In doing so, the IJ considered and articulated four particularized reasons why declining to conduct a hearing in the Charlotte Immigration Court was proper:

> (1) That [Palacios] is unable to appear in person at a bond hearing before the undersigned as his docket is limited to respondents not in detention.
> (2) That the site of Respondent's detention does not have the technical capability for them to appear before the undersigned by video teleconference.
> (3) That Respondent is not able to testify on their own behalf to answer questions related to their criminal record or available relief from removal.
> (4) That Respondent is therefore unable to meaningfully participate in any custody redetermination proceedings conducted in a non-detained setting.

(Doc. No. 21-3, Ex. B at 4). The IJ elaborated and grounded this finding in rules relating "to venue, not jurisdiction." (Id.). Ultimately, the IJ determined that conducting Palacios's bond hearing in another venue would be more advantageous to Palacios.[1] The day after the IJ's order, Palacios was transferred to the Stewart

---

[1] "The Court determines that the respondent's request for bond

Detention Center.  (Doc. No. 21-2, Ex. A ¶ 10).  Palacios eventually received an initial bond hearing at Stewart Detention Center in Lumpkin, Georgia on February 8, 2018 and a final bond determination on February 15, 2018.  Id. ¶¶ 11–12.

The IJ in the Lozoya case made a similar determination, based on venue considerations.  Lozoya was taken into administrative ICE custody at the Wake County Detention Center on January 4, 2018, and he filed a motion for bond redetermination with the Charlotte Immigration Court on this day.  (Doc. No. 1 ¶ 47; Doc. No. 21-2, Ex. A ¶ 16).  On January 5, 2018 the Charlotte Immigration Court scheduled a bond hearing for January 10, 2018.  (Doc. No. 1 ¶ 47).  Lozoya signed a waiver of appearance authorizing his attorney to represent him at a bond hearing in his absence on January 5, 2018.  (Id.).  On January 8, 2018, under an existing schedule, ICE transferred Lozoya to the Stewart Detention Center.  (Doc. No. 21-2, Ex. A. ¶ 18).  The IJ, in her discretion, declined to exercise her authority to conduct a bond hearing because Lozoya had already been transferred to the Stewart Detention Center.  (Doc. No. 1 ¶ 47).  Subsequently, Plaintiff Lozoya received an initial bond hearing at Stewart Detention Center on January 31, 2018—

---

redetermination is more appropriately heard in an Immigration Court which supports a detained docket and affords them an opportunity to appear in person." (Doc. No. 21-1, Ex. B at 5).  Interestingly, The IJ added a footnote to this sentence which "anecdotally" mentioned that "local practioners have admitted to [The IJ] they file motions for custody redetermination in Charlotte Immigration Court as a form of 'judge shopping' because they seek more favorable bond decisions than those issued by the Immigration Judges assigned to the detained dockets in Georgia." (Id. at 5 n.1).  The Court makes no finding on this alleged practice.

at which he was able to appear in front of an IJ—and a finalized determination on February 8, 2018. (Doc. No. 21-2, Ex. A ¶¶ 20–21).

This Court finds that the reasons the IJs chose not to conduct bond hearings in Plaintiffs' cases were reasonable and were not part of a larger scheme to mechanically deny detainees' requests for bond hearings. As is evidenced in the IJ's Order, just because the Charlotte IJs have the authority (jurisdiction) to hold these bond hearings does not mean that they have the obligation to hold these hearings in their particular court (venue).[2] (See Doc. No. 21-3 at 4). This is especially true in light of the fact that another venue—the Stewart Detention Center—was more proper since it was the locale of Plaintiffs' permanent detentions. Plaintiffs argue in their objections that "IJs do not have the discretion to sua sponte change venue of bond proceedings." (Doc. No. 27 at 14). This is true. See 8 C.F.R. § 1003.20(b). But, their contention ignores the facts of what the IJ Defendants actually ordered. The IJ Defendants did not change venue; rather, they made a finding that the Charlotte Immigration Court was not the proper venue for Plaintiffs' bond hearings based on the unique facts of Plaintiffs' individual cases. And thus, the IJ Defendants decisions were discretionary, not mechanical.

Plaintiffs emphasize that Plaintiffs Palacios and Couch waived the right to appear, and thus Plaintiffs' physical location and site of detention were immaterial

---

[2] See also Matter of Reyes, 26 I. & N. Dec. at 530 n.6, which provides a helpful explanation of the distinction between jurisdiction and venue.

to conducting the hearing since Plaintiffs did not demand that they be physically present at the hearing.  Nevertheless, the Court still finds that the Charlotte IJs had legitimate reasons for choosing to decline conducting the bond hearings in Charlotte Immigration Court.[3]  Because the Carolinas were a transitory site for Plaintiffs en route to Plaintiffs' final detainment destination, Stewart Detention Center, it was logical for the IJs to conclude that Stewart would be a more proper venue for the bond hearings.  Regardless, it is not this Court's task to evaluate whether the IJ Defendants' reasons behind declining to conduct hearings were correct—rather, it is merely this Court's task to determine whether the IJ Defendants had *any* reasons to decline conducting the hearings.  In other words, it is our job to decide whether the IJ Defendants chose, in their discretion, to not conduct the hearings, or whether they summarily and automatically declined to hold the hearings as mandated by an internal "No Bond Hearing Policy."  The Court finds that the former is true and that the IJ Defendants' alleged "No Bond Hearing Policy" is nonexistent.

---

[3] As Defendants point out in their response to Plaintiffs' objections to the M&R, even though Palacios and Lozoya waived the right to appear, there are many good reasons why an IJ might want an alien to be present.  (Doc. No. 28 at 5).  Because the central inquiry in bond redetermination hearings is determining whether the alien is a flight risk or a danger to the community, it is helpful to the IJ to have the detainee in front of him so that the IJ may assess credibility and remorse.  (Id.).

B.  Because the IJ Defendants' Decisions Were Discretionary, the M&R Correctly Determined This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Case.

Next, Plaintiff argues that because the M&R mischaracterized Plaintiffs' claims as discretionary in nature, the M&R also erred in declining to exercise subject matter jurisdiction under 8 U.S.C. § 1226(e) and 1252(a)(2)(B)(ii). Having decided that the M&R properly characterized the challenged actions of IJ Defendants as discretionary, the rest of the Court's analysis is straightforward.

The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). Subject matter jurisdiction is so limited that federal "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) (internal citations omitted).

Here, Defendants properly raised the issue of subject matter jurisdiction in their Motion to Dismiss. (Doc. No. 21-1 at 10–12). They based their arguments on two key statutory provisions, 8 U.S.C. § 1226(e) and 1252(a)(2)(B)(ii), that indicate the clear intention of Congress to strip federal district courts of the ability to engage in judicial review over Plaintiffs' case. The M&R agreed with Defendants, and so

11

does this Court: this Court has no authority to exercise jurisdiction over Plaintiffs' case.

Congress has delegated decisions to detain or release an alien on bond to the Attorney General. <u>See</u> 8 U.S.C. § 1226(a). Under 8 U.S.C. § 1266(a), "the Attorney General (1) may continue to detain the arrested alien; and (2) may release the alien on— (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole." <u>Id.</u> As mentioned *supra*, the Attorney General has delegated this authority to immigration judges. 8 C.F.R. §§ 1003.10, 1003.19(a); <u>Matter of Reyes</u>, 26 I. & N. Dec. at 530. An alien may appeal an adverse bond determination to the Board of Immigration Appeals. 8 C.F.R. § 10003.19(f). But, the agency's "discretionary judgment regarding the application of [§ 1226(a)] shall not be subject to review" by any federal court. 8 U.S.C. § 1226(e). An IJ's decision regarding where and when to hold bond hearings falls within the purview of the agency's discretionary judgment. <u>Matter of Reyes</u>, 26 I. & N. Dec. at 530–31 ("Although the regulations suggest that a bond hearing will usually be held in the location where the alien is detained, policies related to the scheduling of bond hearings, including determining the location of the hearing, are properly within the province of the [immigration courts]."). Thus, those decisions are shielded from judicial review.

Plaintiffs argue that "federal courts regularly find that they have jurisdiction over challenges to detention policies and practices" and cite various, non-binding federal cases to support this proposition. (Doc. No. 27 at 16). However, because this

Court determined that Plaintiffs challenge individual, discretionary IJ determinations, and not a uniform detention policy and practice, the Court's decision that it lacks subject matter jurisdiction is consistent with these non-binding, federal cases. Additionally, Plaintiff argues that even if the IJ Defendants' actions were discretionary and thus fell within the purview of 8 U.S.C. § 1226(e), "multiple federal courts, including four courts of appeals, have held that § 1226(e) does not demonstrate clear and convincing evidence that Congress intended to allow IJs to evade federal court review for violations of the Constitution, the [Immigration and Naturalization Act], or [Executive Office for Immigration Review]'s regulations." (Doc. No. 27 at 17) (citing various federal cases and noting that the Fourth Circuit has yet to rule on the matter). Again, the Court's decision today is not inconsistent with these decisions because Plaintiffs are not alleging that Defendants violated any statutes, regulations, or the Constitution, although the Complaint attempts to couch Plaintiffs' grievances invoking these terms. (Doc. No. 1 ¶¶ 86–113). In reality, Plaintiffs' Complaint challenges a "No Bond Hearing Policy" that IJ Defendants supposedly apply to all bond hearing requests in a mechanical fashion. But as demonstrated, this supposed policy is nonexistent; rather, Plaintiffs disagree with the individualized determinations the IJ Defendants made regarding their particular bond hearing requests. This is not a constitutional, statutory, regulatory claim; it is a claim challenging the Attorney General's discretionary action—something this Court has no power to adjudicate.

Yet, Plaintiffs persist in their objections. They also challenge the M&R's

13

finding that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes federal subject matter jurisdiction. This Section provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority for which is specified under this subchapter." 8 U.S.C. § 1252(a)(2)(B)(ii). As the M&R correctly notes, this statutory provision also withholds subject matter jurisdiction over challenges like the ones Plaintiffs make. (Doc. No. 26 at 7) (citing cases).[4] Here again, Plaintiffs attempt to distinguish their claim, insisting that they challenge Defendants' policies—something a federal court can review—and not Defendants' discretionary determinations—something barred from federal judicial review. The Supreme Court has held that, when a statute unambiguously places a determination within the Attorney General's discretion—as does 8 U.S.C. § 1226(a)—8 U.S.C. § 1252(a)(2)(B)(ii) prohibits federal judicial review. Kucana v. Holder, 558 U.S. 233, 237 (2010) ("§ 1252(a)(2)(B) applies … to Attorney General determinations made discretionary by statute."). But because this Court finds that Plaintiffs challenge discretionary determinations of Defendants, Plaintiffs' contention that 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar this Court's review is

---

[4] Brito-Ramirez v. Kelly, No. 0:17-463-TMC-PJG, 2017 WL 1363904, at *1 (D.S.C. March 3, 2017) (finding that district court lacked subject matter jurisdiction to review a similar claim challenging detention of aliens), aff'd, No. 0:17-463-TMC, 2017 WL 1329360, at *1 (D.S.C. April 11, 2017); see also Loa-Herrera v. Trominski, 231 F.3d 984, 991 (5th Cir. 2000) ("[t]he Attorney General's discretionary judgment regarding the application of [bond]—including the manner in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints—is not . . . subject to review [under the INA].").

without merit.

    C.    <u>The M&R Correctly Determined that Defendant White's Motion to Dismiss Should be Denied as Moot.</u>

Finally, Plaintiffs object to the M&R failing to adjudicate the merits of Defendant White's Motion to Dismiss. (Doc. No. 27 at 25). However, because the Court finds that the M&R correctly recommended that Plaintiffs' claims be dismissed since this Court lacks federal subject matter jurisdiction over Plaintiffs' claims, the M&R also properly recommended that Defendant White's Motion to Dismiss be denied as moot.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that

1.    The Magistrate Judge's M&R, (Doc. No. 26), is **ADOPTED**;

2.    Federal Defendants-Respondents' Motion to Dismiss, (Doc. No. 21), is **GRANTED**;

2.    Defendant White's Motion to Dismiss, (Doc. No. 13), is **DENIED as MOOT**;

3.    Plaintiffs' Motion to Certify Class, (Doc. No. 2) is **DENIED as MOOT**; and

4.    The Clerk of Court is directed to close this case.

Signed: September 29, 2018

Robert J. Conrad, Jr.
United States District Judge